## SCHWALBENBERG v. DOWELL.

(Court of Appeals of District of Columbia. Submitted November 16, 1923.
Decided February 5, 1924.)

### No. 1601.

1. **Patents ⊚87, 91(4)—Evidence held to sustain findings of tribunals of Patent Office as to reduction to practice, disclosure of invention, and abandonment.**

In an interference proceeding relating to a device for regulating water-cooling systems of internal combustion engines, evidence *held* to sustain concurrent findings of Patent Office tribunals that junior party's reduction to practice was about a year before senior party filed his application, and many months before the latter disclosed his invention, and that there had been no abandonment.

2. **Patents ⊚90(5)—Junior application entitled to priority, where junior party first reduced invention to practice.**

Where junior party's operations amounted to a reduction to practice prior to disclosure by senior party, and junior party did not abandon his invention in the meanwhile, or otherwise deprive himself of his rights thereunder, the junior application *held* entitled to priority in an interference proceeding.

Appeal from the Commissioner of Patents.

Interference proceeding between Peter J. Schwalbenberg and others and Chester M. Dowell. From a decision awarding priority to the last-named party, the first-named party alone appeals. Affirmed.

W. B. Kerkam and Loyd H. Sutton, both of Washington, D. C., and Clifford E. Dunn, of New York City, for appellant.

William F. Hall, Joseph H. Milans, and Calvin T. Milans, all of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. An appeal in a patent interference proceeding. When Dowell, the appellee, filed his present application for a patent, an interference was declared, involving four prior applications, to wit, those respectively of Galli, Thomas, Furber, and Schwalbenberg. Of these parties Galli made no appearance whatever, Thomas and Furber unsuccessfully contested the issue in the Patent Office, but took no appeal to this court, and Schwalbenberg, who also suffered an adverse decision below, is now the sole appellant here.

[1] The invention in question provides a device for regulating the water-cooling systems of internal combustion engines. The chief use of such engines is in propelling automobiles, but they are also used with stationary machinery. Engines of this type operate best when heated to a high temperature, but the cylinders tend to overheat when in use, and consequently require a cooling system for their regulation. The system which is generally employed for that purpose consists of water jackets about the cylinders, connected with a radiator, through which the water is circulated in order to cool it. In cold weather such a system serves a double purpose, for the water, when once heated, tends to make

the temperature of the engine more uniform, and by conserving the heat aids in starting the engine after it has been shut off for a limited time.

The present invention consists of such a system for preventing overheating, and at the same time maintaining the heat of the engine during brief intervals of disuse. It operates by means of a series of shutters in front of the radiator, which, when closed, serve as a shield for it. These are kept normally closed, in the system devised by Dowell, by means of a spring; but when the engine is in action, and the water reaches a given temperature, the shutters are automatically opened, and in turn they are closed again when the heat subsides below that temperature, or when the engine is shut off. This result is accomplished by means of a thermostat attached to the radiator, in electrical connection with an electro-magnet, which governs the adjustment of a small cylinder with a piston moving therein; the cylinder being connected by means of a tube with the intake manifold of the engine, and its piston being thus actuated by force of the suction of the engine pistons. By means of these parts, when the heat rises to a predetermined degree, the shutters are automatically opened, and when the heat subsides, or the suction of the engine ceases, the shutters are automatically closed.

The three counts of the issue, defining in general terms the automatic control of the shutters, are as follows:

Count 1. The combination of an internal combustion engine, a cooling system therefor, including a radiator, means for controlling the cooling capacity of the radiator, and means directly responsive to suction produced in the engine cylinders, for actuating the controlling means.

Count 2. The combination of an internal combustion engine, a cooling system therefor, including a radiator, means for controlling the cooling capacity of the radiator, means directly responsive to suction produced in the engine cylinders, for actuating the controlling means, and a thermostatic device governing the operation of the means responsive to suction.

Count 3. The combination of an internal combustion engine, a cooling system therefor, including a radiator, means for varying the cooling capacity of said radiator, a motor adapted to actuate said means, said motor being connected with the intake of the engine, and adapted to be actuated by the suction of the engine in said intake.

[2] The appellant, Schwalbenberg, filed his application on May 19, 1916, and in his preliminary statement he gave the date of conception as February 10, 1915, and the date of his first drawings and disclosure to others as February 10, 1916. There is nothing in the record to indicate a reduction to practice by him before the filing of his application. Dowell filed his application on April 3, 1917, and accordingly is the junior party in the proceeding. In his amended statement he alleged conception in July or August, 1914, and disclosures to others with drawings within a month thereafter. He alleged, also, that he constructed a model embodying his invention in February, 1915; that on or about May 15, 1915, he began the construction of an operative device capable of being put into practical use; that he completed it on or about June 1, 1915, and successfully tested it on or about June 2, 1915; and that this device is still in use. It is at once apparent that, if this device was constructed and operated by Dowell on or before June 2, 1915, as claimed by him, and if the operation amounted in fact to a reduction to practice, his junior application would be entitled to priority in this pro-

ceeding, unless he had abandoned it in the meantime, or had otherwise deprived himself of his right thereunder.

This question was presented in the Patent Office upon the evidence, and was successively decided in favor of Dowell by the Examiner of Interferences, the Examiners in Chief, and the Assistant Commissioner. Upon a review of the record we agree with their conclusions.

Dowell himself testified that after a period of study upon the project he conceived the invention in July or August, 1914, and began the construction of his device about May 15, 1915, and that he completed it and successfully tried it out on his automobile about June 2, following; that on May 30 he exhibited the device to Landgreve in his laboratory, and on the same day he installed it upon his automobile in the garage, and successfully operated it there twice in the presence of Traylor and once in the presence of Doane, the automobile being stationary during the test, with the engine evenly running at a rate comparable with a speed of 8 or 12 miles an hour for the car if in motion; that the shutters then opened and closed as designed by the invention; that he was enthusiastic over the success of his device, and decided to have it patented, and that he made drawings and a written description of it, and in the latter part of 1916 he sent these to his attorney in Washington; that the delay in doing this was occasioned by his other pressing engagements at the time; that he had the device on and off his car a number of times during 1915 and the summer of 1916, but he never exhibited it in public, because it was an invention, and he did not care "to display it unduly."

It is needless to recount the testimony of the other witnesses, but it may be said in brief that Dowell's statements relative to the disclosure and the successful operation of the device on May 30 were fully corroborated by the testimony of Landgreve, Traylor, and Doane, who appear to have been intelligent and indeed expert witnesses, as well as by circumstances established by the testimony of other credible witnesses, and that the effort to overcome the force of this testimony by that of opposing witnesses was a complete failure. The testimony accordingly established the fact that Dowell's action on May 30, 1915, was not a mere experiment, which was subsequently abandoned, but was an actual reduction to practice, with a crude, but efficient, operative device of the invention. It is true that the tests in question were made upon an automobile at rest and not in motion, but we regard that as immaterial under the circumstances. The date of this reduction to practice was about a year before Schwalbenberg filed his application, and many months before the date alleged for the latter's drawings and disclosure of his invention. Nor is there any evidence in the record tending to establish an abandonment by Dowell of his invention.

We may say that in thus briefly referring to the proofs we do not mean to overlook or disparage the established rule of this court which favors the authority of three concurring decisions of the Patent Office in such a proceeding as this. It may be noted in conclusion that a question arose in the Patent Office as to whether the official exhibit of Dowell's invention had been altered during the pendency of the proceedings. The subject requires no comment here, except to say that it

justified the printing of the entire record in this court, and that the objection and motion of the appellant in relation to the printing and the cost thereof are overruled.

In accordance with the foregoing views, we affirm the decision of the Assistant Commissioner.